632 S.E.2d 42

**Dale Patrick DONAHOE, Petitioner Below, Appellant**

v.

**Victoria Diane DONAHOE, Respondent Below, Appellee.**

**No. 32763.**

Supreme Court of Appeals of West Virginia.

Submitted: March 28, 2006.

Decided: May 12, 2006.

Mark McMillian, Charleston, for Appellant.

Christopher G. Moffatt, Reed, Moffatt & Associates, Charleston, for Appellee.

PER CURIAM:

In this appeal from the Family Court of Kanawha County, we are asked to review an order in a fourteen-and-a-half-year-old divorce action finding the appellant in contempt of court for repeatedly refusing to comply with an order entered in October 1991.

As set forth below, we affirm the family court's decision finding the appellant in contempt of court. However, we reverse the family court's order to the extent it requires the appellant to assist the appellee in making payments toward a non-existent marital debt: a mortgage on the former marital household. The marital debt has been discharged, yet the family court required the appellant to make payments to the appellee for that debt. As set forth below, we find it was error for the family court to compel the appellant to make payments on the debt after it had been discharged.

I.

In June 1991, appellant Dale Patrick Donahoe filed a complaint for divorce from his then-wife, appellee Victoria Diane Donahoe. The parties owned a house in Charleston, West Virginia, and one child was born of the marriage in March 1991. By a temporary relief order dated October 31, 1991 (and a subsequent corrected order dated December 10, 1991), a family law master awarded custody of the parties' child to the appellee. The appellant was ordered to pay $362.00 a month as support for the child.

The orders also gave the appellee sole possession of the marital household. The appellant was ordered to pay the appellee $200.00 a month to assist the appellee in paying the parties' mortgage on the house. The appellee was ordered to apply the

$200.00 toward the parties' mortgage, and to keep the mortgage current.

The record before this Court indicates that in 1999, the appellant conveyed his interest in the marital household to the appellee. The appellee was then able to sell the house to third parties on July 26, 2000.

It appears, however, that prior to and after these conveyances, the appellant missed some or all of the $200.00 payments that were due to the appellee to assist her in paying the parties' mortgage on the marital household. The appellant also failed to routinely make the $362.00 monthly child support payments.

Accordingly, the appellee filed a petition for contempt against the appellant. At a February 26, 2003 hearing, the family court orally found that the appellant had failed to make timely child support payments and mortgage payments[1] to the appellee as ordered in 1991. The family court found that the appellant had failed to make $49,821.00 in payments to the appellee, not including statutory interest. The family court ordered the appellant to begin making current payments on the child support obligation, and to pay $1,500.00 to reduce the arrearage owed to the appellee.

The family court judge did, however, find that the parties' marital residence had been sold and the parties' mortgage on the house paid. Accordingly, at the February 2003 hearing the family court terminated the appellant's obligation to make $200.00 per month mortgage payments to the appellee.

The appellee subsequently informed the family court that the appellant never made the $1,500.00 payment ordered by the court, and that the appellant was an additional $2,934.00 in arrears on his child support obligation. In an order dated March 3, 2004, the family court concluded that the appellant "has had the ability to pay court ordered child support and mortgage payments," but

that his failure to pay was "wilful and contumacious."[2] The family court found the appellant was in civil contempt of the court's orders, and ordered that the appellant be incarcerated for sixty days if he did not make a $4,434.00 payment to the appellee.

The appellant filed a motion to appeal the family court's order to the circuit court. On March 17, 2004, the Circuit Court of Kanawha County found that the motion failed to state adequate grounds for review.

The appellant now appeals the family court's March 3, 2004 contempt order.

## II.

■ "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

On appeal to this Court, the appellant asks that we reverse and vacate the family court's contempt order. However, the appellant does not challenge the family court's finding that he was in arrears in failing to pay child support and mortgage payments between 1991 and 2003, and that he blatantly failed to make those payments in contempt of the court's 1991 orders.

■ The appellant challenges only one portion of the family court's order: the court's finding that he should have continued to make mortgage payments to the appellee after he deeded his interest in the marital household to the appellee in 1999.

In assessing the appellant's argument, we are guided by the fundamental principle that—put bluntly—the law is not an ass.[3]

---

1. The appellant, in his brief, appears to concede missing 137 months of mortgage payments, a total of $27,400.00.

2. The family court based these conclusions, in part, on the appellant's self-employment as a certified public accountant, and on the appel-

lant's seven or eight trips to Europe since 2001 to visit with a girlfriend.

3. *See* George Chapman, *Revenge for Honor*, Act III, Scene ii (1654) ("I am ashamed the law is such an ass."); Charles Dickens, *Oliver Twist*, ch. 51 (1837) ("'If the law supposed that,' said Mr. Bumble ... 'the law is a ass—a idiot.' ").

The appellant was, in part, found in contempt for not making mortgage payments for a mortgage that didn't exist.[4] The court's 1991 order appears to have been calculated to ensure the protection of a marital property interest—the parties' joint mortgage. The 1991 order was written so as to ensure that a debt owed to a marital creditor was satisfied. Only when the mortgage ceased to exist did the appellant's duty to contribute toward the reduction of that marital debt similarly cease. The appellant, though, argues—contrary to the 1991 order—that the day he conveyed the marital house to the appellee in 1999 is the day his obligation toward the mortgage ceased. We disagree. It is our understanding from the record that, after the 1999 conveyance, the mortgage continued to exist as a marital debt. The appellant was liable for his share of that debt, until the date the debt was discharged.

However, the family court erred in compelling the appellant to make mortgage payments to the appellee after the marital household had been sold, and the parties' mortgage debt discharged. Accordingly, the family court erred to the extent it required the appellant to meet a property obligation that did not need to be met.

 But just as importantly, the law is also not to be lightly mocked. The appellant has repeatedly demonstrated contempt for the court's orders. The record supports the family court's conclusion that the appellant has, since 1991, repeatedly failed to comply with the court's orders. The family court was therefore fully justified in imposing whatever legal sanctions it chose to compel the appellant's acquiescence to the court's authority.

### III.

We reverse the family court's March 3, 2004 order to the extent it requires the appellant to make mortgage payments to the appellee beyond the date when the appellee conveyed the marital household to a third party and, presumably, satisfied the parties' marital mortgage debt. The case is remanded to permit the family court to recalculate the appellant's arrearage owed to the appellee. The order is affirmed in all other respects.

Affirmed, in part, Reversed, in part, and Remanded.

DAVIS, C.J., deeming himself disqualified, did not participate in the decision of this case.

GRAY SILVER, III, Judge, sitting by temporary assignment.

---

4. If the court's 1991 orders had characterized the mortgage payment as child support or spousal support, our decision would likely be different. *See* Syllabus Point 1, *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987) ("Matured installments provided for in a decree, which orders the payment of monthly sums for alimony or child support, stand as 'decretal judgments' against the party charged with the payments."). *But see* W.Va.Code, 48–5–706 [2001] ("[T]he court may . . . alter any prior order of the court with respect to the distribution of marital property, if . . . [t]he alteration of the prior order as it relates to the distribution of marital property is necessary to avoid an inequitable or unjust result[.]")